1

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT FOR THE

7                     EASTERN DISTRICT OF CALIFORNIA

8

9   ARROLENE C. BURRELL,          )        No. CV-F-08-067 OWW/SMS
                                   )
10                                 )        MEMORANDUM DECISION RE
                                   )        DEFENDANT'S MOTION FOR
11               Plaintiff,        )        PARTIAL DISMISSAL OF
                                   )        PLAINTIFF'S CLAIMS (Doc. 4)
12          vs.                    )
                                   )
13                                 )
    R. JAMES NICHOLSEN, Secretary )
14  for the U.S. Department of     )
    Veterans Affairs,             )
15                                 )
                                   )
16               Defendant.        )
                                   )
17  _____)

18        Before the Court is Defendant's motion for partial dismissal

19  of Plaintiff's claims for lack of subject matter jurisdiction

20  pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, on

21  the grounds that (1) Plaintiff failed to timely assert an

22  administrative complaint regarding changes to her position and

23  title in 2002-2003; (2) that Plaintiff failed to timely raise a

24  hostile work environment claim; and (3) that Plaintiff failed to

25  timely raise any claim relating to violation of the Collective

26

                                   1

1  Bargaining Agreement.[1]

2      On September 20, 2007, Plaintiff Arrolene C. Burrell filed a

3  "Complaint - Employment Discrimination Based on Race/Color and

4  Reprisal" pursuant to the Civil Rights Act of 1964, 42 U.S.C. §

5  2000e-16 *et seq.* (Title VII) and the Declaratory Judgment Act, 28

6  U.S.C. § 2201, against the Secretary for the United States

7  Department of Veterans Affairs.[2]  The Complaint alleges that

8  Plaintiff has been discriminated in employment "based on her

9  race/color (African-American/Black) and reprisal, by forcing out

10 all African-American managers into retirement and/or lower status

11 position without legitimate justification, demotion from Chief

12 Social Work Service and replacement by a person with a fake-Ph.D

13 from an unaccredited university, downgrading of her performance

14 rating, reassignment of her position, denial of within grade

15 increase, hostile work environment and constructive

16 discharge/forced retirement."  The Complaint alleges that

17 Plaintiff "is an African-American/Black female who was employed

18 by the U.S. DEPARTMENT OF VETERANS AFFAIRS since 1975, and as

19 Chief of Social Work Service, GM-13, beginning 1993;" that "[h]er

20 performance was satisfactory or better, at all times material to

21 this action;" and that [s]he was constructively terminated ... on

22 _____

23     [1]Because of allegations in the Complaint concerning
   Plaintiff's age, Defendant moved for dismissal of any claim based
24 on age discrimination in employment.  Plaintiff clarifies in her
   opposition to the motion for partial dismissal that she is *not*
25 alleging employment discrimination based on age.  This ground for
   partial dismissal is moot.
26     [2]The Complaint was filed in the Northern District of
   California and transferred to the Eastern District of California.

2

1   or around October 15, 2005."

2   In the section of the Complaint captioned "Exhaustion of

3   Remedies," Plaintiff alleges:

> 6.  On September 20, 2004, Plaintiff ...
> filed the informal EEO complaint, alleging
> discrimination on the basis of her race/color
> (African-American/Black) ... based on the
> removal/change of her position and title,
> when her GM rating was taken away and she was
> reassigned to other positions, to wit, she
> was assigned from the supervision of the
> Chief of Staff to the Chief of Mental Health
> in March 2002, and back to the Chief of Staff
> in September 2002, then to the supervision of
> Alan Perry, Director of the Fresno VA in June
> 2003; on September 9, 2003, her title was
> changed from Supervisory Social Worker,
> Series 185 to Special Assistant to the
> Director, Series 301.  Agency Report of
> Investigation (ROI), Tab A-3a.  A formal
> complaint was filed on November 17, 2004
> regarding those issues.

> 7.  On October 4, 2005, shortly after
> learning that plaintiff engaged in protected
> activity by filing an informal complaint,
> Alan Perry, Director of the Fresno VA
> informed Plaintiff that her former position
> as Supervisory Social Worker, GS-0185-13/13
> would be announced, Vacancy Announcement No.
> 04-42.  See ROI, Tab A-9.  Her performance
> rating was downgraded to 'fully successful',
> [sic] and she was given a new position
> description a few days prior to the close of
> the rating period and rated according to
> these new standards for the entire rating
> period.  On February 23, 2005, she filed a
> formal complaint alleging discrimination on
> the basis of race/color ... and reprisal re:
> non-selection for Chief Social Work Service,
> downgrading of her performance rating,
> reassignment of her position, denial of
> within grade increase and constructive
> discharge/forced retirement.  Those
> complaints were consolidated on February 28,
> 2005.  See ROI, Tab A-9.  Brian Hemenway was
> appointed as investigator in March 2005 and
> released a Report of Investigation ('ROI')

3

... A timely request for hearing was filed and the case was assigned to Administrative Judge Marianna Warmee.  Judge Warmee issued a Notice of Intent to Issue a Decision Without a Hearing on August 15, 2006.  On August 25, 2006, Complainant filed an opposition to Notice of Intent To Issue A Decision Without A Hearing issued on August 15, 2006.

8.  On December 23, 2005, BURRELL filed a motion to add a claim of [sic] to the issues in the pending complaints when the Agency BURRELL's working environment so intolerable [sic] that she was forced to retire.  The issue was referred to the Merit Systems Protection Board, who issued a decision filing that it did not have jurisdiction over the claim at which point, it was sent back to the EEOC to be decided together with the other issues in the case.  On May 23, 2006, Plaintiff filed a motion to add a claim of hostile work environment based on Agency's harassment, including rekeying her office without prior notice, destroying her personal property and patient files and removing them from her office into another shared office where she did not have the privacy to perform her job, she was given outmoded computer equipment and subjected to ostracism and ridicule.

9.  On May 31, 2007, the Defendant filed a motion for partial decision without a hearing and the Plaintiff timely filed a motion in opposition to the Defendant's partial decision without a hearing.  On or around August 24, 2007, Plaintiff received a decision without a hearing from the Office of Federal Operations of the Equal Employment Opportunity Commission dated August 21, 2007.  It has been over 180 days since she filed the formal complaint and there has been no hearing or final agency decision on the original complaint.  Plaintiff has fully exhausted her administrative remedies on all claims raised in the administrative process.

In the section of the Complaint captioned "Statement of Facts," it is alleged:

4

10. Plaintiff BURRELL is a member of a protected group based on her race/color and reprisal for protected activities.

11. Plaintiff BURRELL fully exhausted her administrative remedies for EEO Case Nos. 200P-0570-2004104331 and 200P-0570-2005101188 Consolidated Cases when the Office of Federal Operations issued a Decision Without A Hearing.

12. ARROLENE BURRELL, served as a social worker for the Department of Veterans Affairs for 30 years.

13. BURRELL was promoted to Supervisory Social Worker GS-12 in Memphis on October 11, 1987. See ROI, Tab B-1, Burrell affidavit, page 5-6.

14. In 1991, BURRELL was laterally transferred to the Fresno VA as a Supervisory Social Worker GS-12 and promoted to Chief of Social Work Service. *Id.* at 6. This position was upgraded to a GM-13 in 1993. *Id.*

15. At all times material to this action, Plaintiff BURRELL was qualified for the position. *Id.*

16. At all times material to this action, Plaintiff BURRELL performed her duties in a satisfactory manner.

17. At all times material to this action prior to October 15, 2005, defendant took no disciplinary action against Plaintiff BURRELL and had no valid documented criticism of her work.

18. Mr. Perry, the same Director of the Fresno VA who led the decentralization of the Social Work Service branch, gave BURRELL a Special Contribution Award on December 19, 2003 and on December 15, 2004 for Superior Performance in FY 2004. See Declaration of Burrell in Support of Motion to Add Hostile Workplace claim, Exhibit A Special Contribution Award (FY 2003) and Exhibit B, Special Contribution Award for Superior Performance (FY 2004).

5

19. Ms. Burell had superior performance in her 30 year career with the Department of Veterans Affairs. See ROI, Tab B-2, Perry affidavit, page 20, 23 and 24. However, Mr. Perry lowered her performance rating to fully successful on December 20, 2004. See ROI, Tab B-2, Perry affidavit, page 17-18.

20. In 2000, Mr. Alan S. Perry, Director of the Fresno VA decentralized the Social Work Service. See ROI, Tab B-1, Burrell affidavit, page 7.

21. After the de-centralization, BURRELL's title remained Chief, Social Work Service or Chief Social Worker and performed the other functions for the Chief, Social Work Service or Chief Social Worker position until September, 2004. *Id.* BURRELL also continued to provide supervision of the social work staff. *Id.* However, after the de-centralization, BURRELL's staff was reassigned and her hiring authority was curtailed. *Id.*

22. In 2004, Mr. Perry re-centralized the Social Work Service. *Id.* The non-African-American former Service Chiefs were reinstated in their former positions.

23. On August 23, 2004, Mr. Perry changed BURRELL's position description and also changed her occupation code from Series 0185 (Supervisor Social Work) to Staff Assistant, Office of Director Series 0301 (misc administration) See ROI, Tab B-1, Burrell affidavit, page 12.  BURRELL was not given any reason, based on misconduct or performance, for her demotion.

24. On September 9, 2004, the Agency provided BURRELL with yet another position description that conformed to the occupation code from Series 0185 (Supervisor Social Work), yet her title was changed from Supervisory Social Worker to Social Worker. See e-mail from Pat A. Hillsgen, Chief of Human Resources, to Carolyn Hughes dated March 18, 2005.

25. The Agency removed three other African American chiefs from their supervisory

6

positions during this de-centralization.
Agency removed the supervisory duties of Dr.
Dorythea Williams, Chief of Speech and
Audiology and William Youngblood, Director of
the Home Base Primary Care. See ROI, Tab B-2,
Perry affidavit, page 14. Mike Blathers, the
African American Chief of Police and Security
Service, is also not serving in a supervisory
capacity the Fresno VA.

26. During this decentralization process
however, Caucasian chiefs were allowed to
retain their supervisory status. Ms.
Catherine Crowe, Chief of Prosthetics was
allowed to retain her supervisory duties. See
ROI, Tab B-2, Perry affidavit, page 14. Ms.
Crowe's position was not announced as a
vacancy and she did not have to compete to
keep her title or supervisory duties.  See
ROI, Tab B-1, Burrell affidavit, page 21-22.
Similarly, the Agency allowed Dr. Matthew
Bautista (Caucasian male), Chief of
Psychology Service, to retain his title of
supervisory psychologist and to retain his
supervisory duties. *Id*. Dr. Bautista did not
have to compete for his position either. *Id*.

27. On September 20, 2004, BURRELL filed an
informal complaint of discrimination based on
age (DOB January 1950) race/color
(Black/African American) based on her change
of position and series. (See ROI, Tab A-3a,
EEO Counselor's Report-200P-570-2004104331).
EEO Counselor Vickye E. Gammage interviewed
Mr. Perry regarding the complaint and because
the Agency offered no resolution, BURRELL was
given her final interview on October 20,
2007.  A formal complaint was filed on
November 17, 2004 regarding those issues. See
ROI.

28. On October 6, 2004, the Agency announced
a vacancy for Complainant's position as
Chief, Social Work Service. (See ROI, Tab C-
7, Vacancy Announcement 04-42).

29. The DEPARTMENT OF VETERANS AFFAIRS
selected Carolyn Hughes, a Caucasian woman,
to replace BURRELL on December 30, 2004 as
Chief, Social Work Service GS-0185-13. *Id.* at
10-13. Ms. Hughes had no experience or

training in the Department of Veterans Affairs social work. (See ROI, Tab C-9, Selectee's Application for Vacancy Announcement 04-42). The sole reason provided for hiring Ms. Hughes was that she had a Ph.D. from an unaccredited university. Under the DEPARTMENT OF VETERANS AFFAIRS regulations, a degree from an unaccredited university, as defined by the U.S. Department of Education website, is not recognized.

30. Ms. Hughes did not have sufficient time in grade at the lower level of GS-12, to qualify for the GS-13 position under the DEPARTMENT OF VETERANS AFFAIRS regulations.

31. Mr. Perry also has shown a pattern of hiring less qualified Caucasian candidates over African American employees. Around July 1999, Mr. Perry appointed Ms. Lisa Rogers (Caucasian), as acting Chief of Human Resources and later selected her as the chief. (See ROI, Tab B-1, Burrell affidavit, page 27). Mr. Perry did not select Ms. Marva Rogers (African American) for that position despite the fact that Ms. Rogers had multiple years of experience in human resources. *Id.* Also around November 1999, Mr. Perry disregarded the selection panel's recommendation to hire Ms. Estella Murray (African American), a GS-14 Chief of Food and Nutrition from Long Beach VA, who applied to be the GS-13 Chief of Food and Nutrition at the Fresno VA. (See ROI, Tab B-1, Burrell affidavit, page 28). Mr. Perry hired a Caucasian candidate, Ms. Catherine Moynihan, who interviewed for the position . *Id.* The interviewing panel did not recommend Ms. Moynihan. *Id.* Also Ms. Moynihan had no experience as a chief of a division that would make her better qualified than Ms. Murray for the position. *Id.*

32. After the decentralization, the Agency continued to provide performance appraisals of Caucasian employees such as Ms. Crowe and Dr. Bautista, on Executive Career Field, VA form 3482-E, which is used to evaluate mid-managers and supervisors' performance. (See ROI, Tab B-1, Burrell affidavit, page 26). However, BURRELL was evaluated on VA-Form

8

0750, which was used to evaluate non-supervisors. *Id.* and (See ROI, Tab B-2, Perry affidavit, page 20-21).

33. On February 5, 2005, BURRELL was reassigned to work under the supervision of Carolyn Hughes, Chief, Social Work Service, effective February 7, 2005. (See ROI, Tab B-1, Burrell affidavit, page 37). She was then subjected to a series of hostile actions taken by Ms. Hughes with Mr. Perry's knowledge and ratification (Investigative File, A-1, Examination of Burrell, pp. 45; Correction Sheet, p. 24; Investigative File C-14, Supplemental Declaration of Burrell, including 17 pages plus supporting documentation), which include the rekeying of her office without prior notification (*id.*); Hughes came into her office while she was working and asked for the key on her wrist (*id.*); BURRELL's possessions were suddenly removed from her office when she was on sick leave without prior notification (*id.*); her office was destroyed when Hughes instructed VA employees to throw away many of her personal possessions, documentation needed for her job, and work files (*id.* Supp. Decl. p. 16 and Exhibit K-1, K-2, K-3, K-4); moving her to a small shared office with outmoded equipment (*id.*); assigned denigrating work (*id.*); treated with complete and utter disrespect (*id.*).

34. On February 5, 2005, BURRELL was reassigned to work under the supervision of Carolyn Hughes, Chief, Social Work Service, effective February 7, 2005. (See ROI, Tab B-1, Burrell affidavit, page 37). She was then subjected to a series of hostile actions taken by Ms. Hughes with Mr. Perry's knowledge and ratification (Investigative File, A-1, Examination of Burrell, pp. 45; Correction Sheet, p. 24; Investigative File C-14, Supplemental Declaration of Burrell, including 17 pages plus supporting documentation).

35. On May 27, 2005, Mr. Perry changed BURRELL's title from Supervisory Social Worker GM-13 to Social Worker GS-13. BURRELL was issued a Form 50 re: reassignment from

Social Worker GM-13 rating and replacement with GS-13 rating. (See Investigative File C-15, Memo dated May 27, 2005 from Chief, Human Resources to Burrell, and Form 50, Notification of Personnel Action, dated May 27, 2005).

36. On September 14, 2005, Ms. Hughes provided BURRELL a thirty day Performance Assistance Plan, which had an effective date of September 9, 2005. See Agency Response in Support of Notice of Intent to Issue a Decision without a Hearing dated May 31, 2006, Ex 3 (Declaration of Appellant Arrolene Burrell Re: Constructive Discharge/Forced Resignation Claim), pg 9. This notification failed to provide BURRELL any opportunity to respond to the allegations set forth in the Performance Assistance Plan. *Id.* at 10.

37. The Performance Assessment Plan was given to BURRELL four days prior to the date of her within grade increase (WIGI) from GS-13, Step 9 to GS-13, Step 10. *Id.* at 10.  This was in violation of the VA/AFGE Master Agreement contract which states that notice of denial of WIGI and opportunity to improve must be given 60 days prior to the effective date. *Id.*  Because of this policy violation, on September 18, 2005, BURRELL was given a within grade increase by the Agency. *Id.* at 11. However, the next pay period ending in October 15, 2005, the Agency retracted the WIGI. *Id.* In spite of BURRELL's exemplary performance for thirty years, the Agency gave BURRELL a negative performance rating and placed her on a performance assessment plan in September 2005 which lead to a denial of her within grade increase. See Agency Response in Support of Notice of Intent to Issue a Decision without a Hearing dated May 31, 2006, Ex 3 (Declaration of Appellant Arrolene Burrell Re: Constructive Discharge/Forced Resignation Claim), pg 9-10.

38. On September 27, 2005, BURRELL submitted a medical certification statement and requested advance sick leave. *Id.* Although BURRELL had 228.75 hours of annual leave and 77.75 sick leave remaining, she was placed on AWOL on September 26, 2007 and was placed on

10

LWOP from September 27, 2005 until October 25, 2005. Ex 1, Memo from Carolyn Hughes to Arrolene Burrell dated October 3, 2005 and Ex 2, CSRS Benefit Estimate Report, Arrolene Burrell dated October 25, 2005. The medical certification from BURRELL's treating physician was rejected without explanation and the Agency notified her that she would be placed on AWOL or LWOP status unless she requested FMLA leave. *Id.* Meanwhile, BURRELL's health condition, that is blood pressure and stress, worsened and her physician directed her not to return to work until her health improved. *Id* at 15-16.

39. The Agency constructively discharged BURRELL when it unilaterally discontinued her pay for Pay Period 20. *Id.* at Attachment A, Ex F-2. Because the VA curtailed BURRELL's paycheck and denied her medical leave, she was led to believe that the Agency would remove her from federal service and take away her retirement. *Id.* at 16. Therefore, on October 25, 2005, BURRELL went to the VA Human Resources Department to explore the option of filing her retirement and retired from federal service on October 25, 2007. *Id.*

40. In 2007, two years after BURRELL constructively terminated by the Defendant, the DEPARTMENT OF VETERANS AFFAIRS threatened to deduct additional money from BURRELL's retirement pay. Plaintiff was never notified of the specific reasons for such deductions despite repeated requests from the Plaintiff for an itemized account of the deductions.

41. Defendant, the DEPARTMENT OF VETERANS AFFAIRS sent notification of the alleged overpayment caused by the WIGI award being given to BURRELL for one pay period to the Department of the Treasury, Internal Revenue Service, causing that money to be deducted from her income tax return in violation of federal regulations. The Defendant, the DEPARTMENT OF VETERANS AFFAIRS has admitted that this was done in error, after repeated inquiries from her Congressional Representative's Office, Mr. Nunez.

A.  <u>Governing Standards</u>.

11

1    Rule 12(b)(1) authorizes a motion to dismiss for lack of
2 subject matter jurisdiction.  It is a fundamental precept that
3 federal courts are courts of limited jurisdiction, and that
4 limits upon federal jurisdiction must not be disregarded or
5 evaded.  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365,
6 374 (1978).  The plaintiff has the burden to establish that
7 subject matter jurisdiction is proper.  *Kokkonen v. Guardian Life*
8 *Ins. Co.*, 511 U.S. 375, 377 (1994).  This burden, at the pleading
9 stage, must be met by pleading sufficient allegations to show a
10 proper basis for this Court to assert subject matter jurisdiction
11 over the action.  *McNutt v. General Motors Acceptance Corp.*, 298
12 U.S. 178, 189 (1936); Fed.R.Civ.P. 8(a)(1).
13    When a defendant challenges jurisdiction "facially" all
14 material allegations in the complaint are assumed true, and the
15 question for the Court is whether the lack of federal
16 jurisdiction appears from the face of the pleading itself.  *Titus*
17 *v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993); *Mortensen v. First*
18 *Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir.1977).
19    A defendant may also attack the existence of subject matter
20 jurisdiction apart from the pleadings.  "When considering a
21 motion to dismiss pursuant to 12(b)(1) the district court is not
22 restricted to the face of the pleadings, but may review any
23 evidence, such as affidavits and testimony, to resolve factual
24 disputes concerning the existence of jurisdiction."  *McCarthy v.*
25 *U.S.*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S.
26 1052 (1989).  Defendant may "rely on affidavits or any other

12

evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993 (1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.*

To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim. *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir.2002); *see also Brown v. General Services Administration*, 425 U.S. 820, 832 (1976)

Under regulations applicable to federal employees, "[a]ggrieved persons who believe they have been discriminated against on the basis of race ... must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a Counselor with 45 days of the date the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Failure to comply with this regulation is 'fatal to a federal employee's discrimination claim.'" *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir.2003), quoting *Lyons v. England*, *id.* at 1105; *see also Johnson v. U.S. Treasury Dept.*, 27 F.3d 415, 416 (9th Cir.1994)(This time limit is "'treated as a statute of limitations for filing suit and is subject to waiver, equitable tolling, and estoppel.'"). If the

13

1  matter is not resolved after timely filing with the Counselor,

2  the employee may submit a formal administrative complaint.

3  *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir.2001); 29

4  C.F.R. § 1614.106.  The agency will dismiss a complaint that

5  fails to comply with the applicable time limits or that raises a

6  matter that has not been brought to the attention of a counselor.

7  *Leorna v. U.S. Dept. of State*, 105 F.3d 548, 551 (9th Cir.1997);

8  29 C.F.R. § 1614.107.

9          1.   Background.

10      By letter dated September 29, 2004, Vickye E. Gammage, EEO

11  Counselor for the Department of Veterans Affairs, advised

12  Plaintiff:

13          ... I will serve as your EEO Counselor in the
             matter you reported to this office on
14          September 20, 2004, which is as follows:

15          Basis(es): Race (African-American)

16          Claim: Assignment of Duties

17          Proposed Resolution: Reinstate position
             description, along with social worker series,
18          and duties and responsibilities.

19  (Exh. A, Decl. of Donald C. Phillips).

20      On November 3, 2004, Plaintiff filed a Complaint of

21  Employment discrimination, alleging race as the basis, claiming

22  "[a]dverse discriminatory actions based on race which have

23  included removal/change in position and title, GM rating taken

24  away, multiple reassignment of position, and stating as "Date of

25  Occurrence": August 23, 2004, September 9, 2004.  (Exh. B, Decl.

26  of Donald C. Phillips).

                                14

On February 23, 2005, Plaintiff filed a second Complaint of Discrimination, alleging as the basis race and "reprisal/filed a prior EEO complaint.  The 2005 EEO Complaint asserts as claims:

> Adverse discriminatory action based on race and reprisal/retaliation which have included non-selection for Chief Social Work Service position, fully successful performance rating, reassignment of my position.

The 2005 EEO Complaint states as "Date of Occurrence": February 7, 2005, December 20, 2005 [sic] and December 30, 2005 [sic]. (Exh. C, Decl. of Donald C. Phillips).

By fax dated March 28, 2005, Brian Hemenway advised Alan Perry as Responding Management Official that Hemenway had been assigned to investigate "EEO complaint number 200P-0570-2004104331, which was filed by Arrolene Burrell on November 3, 2004."  Hemenway advised that the claims accepted for investigation were:

> Claim #1: Whether the complainant was subjected to discrimination on the basis of race (Black - African American), when she became aware on September 3 and 9, 2004 that management changed her title and series disallowing her from performing supervisory/non-supervisory social work duties.
>
> Claim #2: Whether the complainant was subjected to discrimination on the basis of race (Black - African American), or reprisal when not selected on December 20, 2004 for the position of Chief, Social Work Service, GS-0185-13, announcement number 04-42.
>
> Claim #3: Whether the complainant was subjected to discrimination on the basis of race (Black - African American) or reprisal when presented with a fully successful rating on December 20, 2004.

15

            **Claim #4: Whether the complainant was
subjected to discrimination on the basis of
race (Black - African American) or reprisal
when informed on January 20, 2005 of a
reassignment under the supervision of Chief,
Social Work Service effective February 7,
2005.**

(Exh D., Decl. of Donald C. Phillips).

      2.   <u>Plaintiff's Claims Regarding Changes to Her
Position and Title in 2002-2003</u>.

     Defendant moves to dismiss the claims in the Complaint
pertaining to the alleged changes to her position and title in
2002-2003.  Defendant notes that the Complaint alleges that
Plaintiff filed her informal EEO complaint on September 20, 2004.
Plaintiff failed to timely assert an administrative claim as to
any discrete event occurring earlier than August 6, 2004 (45 days
prior to the informal EEO complaint.).  Defendant further notes
that Plaintiff's two formal EEO Complaints do not refer to events
occurring in 2002-2003.  Plaintiff's first formal EEO Complaint,
attached as Exhibit B to the Declaration of Donald C. Phillips,
is dated November 3, 2004 and states as "Date of Occurrence":
"August 23, 2004[,] September 9, 2004."  The second formal EEO
Complaint, attached as Exhibit C to Phillips' Declaration, is
dated February 23, 2005 and states as "Date of Occurrence",
February 7, 2005, December 20, 2005 [sic] and December 30, 2005
[sic].

     Plaintiff responds that the timeliness of events occurring
prior to the 45 day period depends "upon what legal claims were
raised with the counselor."  She cites EEOC MD-110, Ch. 3.A.3:

1    In general, for a legal claim to be timely
     raised, at least one of the incidents the
2    complainant cites as evidence in support of
     his/her claim must have occurred within the
3    45 day period for contacting an EEO
     Counselor.
4
     Plaintiff also refers to 29 C.F.R. § 1614.106(d):
5
6    A complainant may amend a complaint at any
     time prior to the conclusion of the
     investigation to include issues or claims
7    like or related to those raised in the
     complaint.  After requesting a hearing, a
8    complainant may file a motion with the
     administrative judge to amend a complaint to
9    include issues or claims like or related to
     those raised in the complaint.
10
     In *National Railroad P. Corp. v. Morgan*, 536 U.S. 101
11
12   (2002), the Supreme Court granted certiorari and rejected the

13   Ninth Circuit's application of the continuing violation doctrine

14   to "serial violations".  The Supreme Court held:

15   The Court of Appeals applied the continuing
     violation doctrine to what it termed 'serial
     violations,' holding that so long as one act
16   falls within the charge filing period,
     discriminatory and retaliatory acts that are
17   plausibly or sufficiently related to that act
     may also be considered for purposes of
18   liability ... With respect to this holding,
     ... we reverse.
19
20   Discrete acts such as termination, failure to
     promote, denial of transfer, or refusal to
     hire are easy to identify.  Each incident of
21   discrimination and each retaliatory adverse
     employment decision constitutes a separate
22   actionable 'unlawful employment practice.'
     Morgan can only file a charge of
23   discrimination to cover discrete acts that
     'occurred' within the appropriate time
24   period.

25   536 U.S. at 114.  "*Morgan* overruled previous Ninth Circuit

26   authority holding that, if a discriminatory act took place within

17

the limitations period and that act was 'related and similar to' acts that took place outside the limitations period, all the related acts - including the earlier acts - were actionable as part of a continuing violation." *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1061 (9th Cir.2002).

Plaintiff did not cite or discuss *Morgan*. Plaintiff acknowledges that she does not have a claim for the 2002-03 changes in her position and title in 2002-2003 because of her failure to exhaust administrative remedies within the time limits required by law. This does not per se exclude reference to these events as evidence of her pattern or practice of discrimination claims or circumstantial evidence of a discriminatory work force environment.

The motion to dismiss is GRANTED for the 2002-2003 claims.

        3.   <u>Plaintiff's Claim Regarding Hostile Work Environment</u>.

Defendant asserts that Plaintiff's claims of hostile work environment alleged in Paragraphs 33 of the Complaint must be dismissed because Plaintiff failed to timely raise such a claim at the administrative level.

Defendant relies on the Declaration of Donald C. Phillips:

> 7. Plaintiff's Complaint raises claims that she was subjected to a hostile work environment. Plaintiff alleges that after February 7, 2005, when she was assigned to work under the supervision of Carolyn Hughes, '[s]he was then subjected to a series of hostile actions taken by Ms. Hughes' including the rekeying of her office, removal of possessions from her office, and moving

18

her to a small, shared office.  Complaint ¶
33.  In her administrative filings, Plaintiff
asserted that each of these specific events
occurred in February or March 2005.  The last
date that *any* act occurred is October 25,
2005, because Plaintiff took voluntary
retirement from the VA on that day.
Plaintiff filed no EEO complaint regarding
hostile work environment.  Instead, on May
23, 2006 - seven months after she retired and
more than a year after the alleged hostile
events relating to her work space - plaintiff
made a motion to the EEOC to add a claim of
hostile work environment to her pending
claims.  The VA opposed the motion on the
grounds that it was untimely and not
sufficiently related to plaintiff's existing
claims, and the EEOC tribunal denied
plaintiff's motion.

Defendant argues that the claims of hostile work environment

must be dismissed because Plaintiff did not file an informal EEO

complaint within the 45 day period and filed no formal EEO

complaint regarding these allegations.

Plaintiff opposes the motion:

Under the federal sector procedure, after the
filing of an EEO complaint, 'a separate EEO
complaint is not appropriate, however, if the
new incident of discrimination raised a claim
that is like or related to the original
complaint.'  EEOC MD-110, Ch.3.B. <u>A
Complainant May Amend A Pending Complaint</u>.

To further avoid the fragmenting of
EEO claims, Administrative Judges
will no longer remand issues to
agencies for counseling or other
processing.  Once a case is before
an Administrative Judge, that
Administrative Judge is fully
responsible for processing it.

EEOC Management Directive 110, Ch. 5.E.  <u>No
More Remands by Administrative Judges</u>.
Plaintiff exhausted administrative remedies
by properly raising constructive discharge

1    with the Administrative Judge.

2        Defendant replies that Plaintiff makes no effort to explain

3    how the allegations of hostile work environment are "like or

4    related to" her EEO Complaints.

5        "'Subject matter jurisdiction extends over all allegations

6    of discrimination that either "fell within the scope of the

7    EEOC's *actual* investigation or an EEOC investigation which *can*

8    *reasonably be expected* to grow out of the charge of

9    discrimination."'" *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062

10   (9th Cir.2006), quoting *B.K.B. v. Maui Police Dep't.*, 276 F.3d

11   1091, 1100 (9th Cir.2002).  As explained in *B.K.B.*:

12             We construe the language of the EEOC charges
               'with the utmost liberality since they are
13             made by those unschooled in the
               technicalities of formal pleading.' ...
14             '[T]he crucial element of a charge of
               discrimination is the factual statement
15             contained therein.' ... Allegations of
               discrimination not included in the
16             plaintiff's administrative charge 'may not be
               considered by a federal court unless the new
17             claims are "like or reasonably related to the
               allegations contained in the EEOC charge."'
18             ... In determining whether a plaintiff has
               exhausted allegations that she did not
19             specify in her administrative charge, it is
               appropriate to consider such factors as the
20             alleged basis of discrimination, dates of
               discriminatory acts specified within the
21             charge, and any locations at which
               discrimination is alleged to have occurred.
22             In addition, the court should consider
               plaintiff's civil claims to be reasonably
23             related to allegations in the charge to the
               extent that those claims are consistent with
24             the plaintiff's original theory of the case.

25   *Id.*

26        Defendant does not challenge as untimely the claims of

                                    20

hostile work environment alleged in Paragraphs 34-39.  Given that these claims are timely and based on the standards set forth above, the allegations of Paragraph 33 are alleged to have occurred in the same time frame as the other alleged instances of hostile work environment, involve the same supervisor, Ms. Hughes, and involve the same theory.  The hostile work environment claims shall not be dismissed and the motion to dismiss is DENIED.

> 4.  **Plaintiff's Claim Relating to Violation of the Collective Bargaining Agreement**.

Paragraph 37 of the Complaint alleges:

> 37. The Performance Assessment Plan was given to BURRELL four days prior to the date of her within grade increase (WIGI) from GS-13, Step 9 to GS-13, Step 10. *Id.* at 10.  This was in violation of the VA/AFGE Master Agreement contract which states that notice of denial of WIGI and opportunity to improve must be given 60 days prior to the effective date. *Id.*  Because of this policy violation, on September 18, 2005, BURRELL was given a within grade increase by the Agency. *Id.* at 11. However, the next pay period ending in October 15, 2005, the Agency retracted the WIGI. *Id.* In spite of BURRELL's exemplary performance for thirty years, the Agency gave BURRELL a negative performance rating and placed her on a performance assessment plan in September 2005 which lead to a denial of her within grade increase. See Agency Response in Support of Notice of Intent to Issue a Decision without a Hearing dated May 31, 2006, Ex 3 (Declaration of Appellant Arrolene Burrell Re: Constructive Discharge/Forced Resignation Claim), pg 9-10.

Defendant moves to dismiss the claim based on the alleged violation of the CBA on the ground that Plaintiff abandoned this

1   claim "during proceedings in the WIGI case before the MSPB."

2   Defendant refers to the Initial Decision of the MSPB

3   Administrative Judge:

4            During her testimony, the appellant
             [Plaintiff] alleged that the agency committed
5            harmful procedural errors by violating two
             other provisions of the CBA.  The appellant
6            testified that the agency (1) failed to give
             her 60 days notice before denying her WIGI,
7            and (2) failed to deem her performance
             satisfactory for the duration of the PAP ...
8            However, the appellant did not raise these
             claims during the prehearing conference for
9            this appeal when I asked her to identify in
             detail any and all affirmative defenses she
10           wished to pursue ... The appellant had an
             opportunity to, but did not object to my
11           omission of these claims from the list of her
             affirmative defenses ... I therefore conclude
12           that the appellant's claims of harmful
             procedural error other than the alleged
13           failure to provide the documents relied upon
             for the WIGI denial were not properly raised
14           or preserved as separate issues.  5 C.F.R. §
             1201.24(b); *cf. Buie v. Officer of Personnel*
15           *Management*, 94 M.S.P.R. 595, 602-03 (2003);
             *Yovan v. Department of the Treasury*, 86
16           M.S.P.R. 264, 266 (2000)(an appellant is
             deemed to have abandoned an affirmative
17           defense if it is not included in the list of
             issues in a prehearing conference summary and
18           the appellant was afforded an opportunity to
             object to the conference summary).
19           Accordingly, I find that any claims by the
             appellant of harmful procedural error by the
20           agency, other than the alleged failure to
             provide the documents relied upon, are beyond
21           the scope of this appeal.

22       Defendant cites *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th

23   Cir.1995), *cert. denied*, 519 U.S. 836 (1996):

24           A plaintiff may not cut short the
             administrative process prior to its final
25           disposition, for upon abandonment of a
             claimant fails to exhaust administrative
26           relief and may not thereafter seek redress

                              22

1              from the courts.

2  Defendant also cites *Vinieratos v. U.S., Dept. of Air Force*

3  *Through Aldridge,* 939 F.2d 762, 771 (9th Cir.1991):

4              Previous decisions by this court and others
               have held that abandonment of the
5              administrative process may suffice to
               terminate an administrative proceeding before
6              a final disposition is reached, thus
               preventing exhaustion and precluding judicial
7              review.

8  *See also Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir.1981): "The

9  failure to raise an issue administratively subverts the

10 procedures and policies of Title VII and justifies precluding its

11 presentation in federal court."

12      Plaintiff asserts that she appealed the Initial Decision

13 ruling to the full MSPB on January 10, 2007, which appeal raised

14 the issue that the AJ ignored the evidence of the violation of

15 the CBA.  Plaintiff refers to the "Declaration of Mary Dryovage,

16 Exhibit C, MSPB Petition for Review Supplemental, filed February

17 9, 2007."  Plaintiff has not provided a copy of this declaration

18 nor does she describe the results of the appeal on the

19 abandonment issue.

20      Plaintiff, at the hearing, acknowledged she does not have an

21 individual claim for violation of the CBA.  The motion to dismiss

22 this claim is GRANTED.

23

24                          <u>Conclusion</u>

25      For the reasons stated above and as admitted by Plaintiff at

26 oral argument on the hearing of this motion:

                                23

1.   **The claim for changes to her position and title in 2002-2003 does not state a claim upon which independent relief can be granted and is DISMISSED, although this does not necessarily bar evidentiary reference to activities in the work place during 2002-2003;**

2.   **Defendant's motion to dismiss the hostile work environment claim as a stand alone claim is DENIED;**

3.   **Any claim to for alleged violation of the collective bargaining agreement is DISMISSED.**

IT IS SO ORDERED.

**Dated:    July 7, 2008**              _____/s/ Oliver W. Wanger_____
                                        UNITED STATES DISTRICT JUDGE

24